UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSEPH McCRAY,

                Plaintiff,                  **REPORT & RECOMMENDATION**

      -against-                              21-CV-4091(DG)(LB)

THE CITY OF NEW YORK; DEPUTY SHERIFF
McMARRO, Badge #449; DEPUTY SHERIFF
PINERO, Badge #433; NEW YORK CITY
DETECTIVE TERESSA RUSSO, #934; KENNETH
THOMPSON, King's County D.A.; RICHARD
FARRELL, King's County A.D.A.; DAVID DINO,
Real Estate Agent; YVONNE LEWIS, Former
Judge; VERONICA CADORE, Straw Person;
MORRIS SHAMUIL, Esq., and JOSEPH WEBBER,
Esq., All defendants being sued in their Individual
capacity,

                Defendants.
-----------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

        Plaintiff Joseph McCray filed the above-captioned *pro se* action alleging defendants violated his civil rights in connection with his 2015 arrest and 2016 criminal conviction in the New York Supreme Court, Kings County. (ECF No. 1 ("Complaint").) Plaintiff filed an Amended Complaint on June 16, 2022. (ECF No. 9 ("Amend. Compl.").) I grant plaintiff's request to proceed *in forma pauperis* ("IFP") but, for the reasons set forth below, I respectfully recommend that plaintiff's claims against defendants should be dismissed under 28 U.S.C. §1915(e)(2)(B).

## BACKGROUND

        The following facts are taken from the Amended Complaint and its exhibits and are assumed to be true.

        Plaintiff is currently incarcerated pursuant to his 2016 conviction (Amend. Compl. ¶ 2.) Plaintiff is "the rightful deed owner of record" of real property located at 119 MacDonough Street in Brooklyn. (*Id.* ¶¶ 14-15.) Defendant Yvonne Lewis, who was then a Justice of the New York Supreme Court, Kings County, "illegally presided over" two civil actions under Index

Numbers 28254/07 and 34487/07 involving the subject property and later "place[d] false charges against the plaintiff" and "declared that the plaintiff somehow mysteriously forged a court document." (*Id.* ¶¶ 10, 16-17, 39-40, 47-48, 63.) Plaintiff asserts that Lewis "by using her judicial power beyond its scope," is not entitled to immunity. (*Id.* ¶¶ 82, 87.)

In 2015, plaintiff attempted to sell the property that he "rightfully believed by way of deed and title was plaintiff[']s." (*Id.* ¶ 74.) Defendant David Dino,[1] a real estate agent, "fraudulently represented the plaintiff[']s true intent" and "violated legal and contractual duties." (*Id.* ¶¶ 27, 37-38.) Defendant Veronica Cadore was a "straw person" who "acted in bad faith and [used] fraudulent acts and or misrepresentations [to] become one of the illegitimate owners by way of illegal transactions" (*Id.* ¶ 29, 41) while "acting as and in the capacity of agent or employee of the department of housing preservation and development" (*Id.* ¶ 11). An attached partial deed dated March 8, 2000 reflects that Cadore purchased an unspecified property as a Sponsor in the Department of Housing Preservation and Development's Asset Sales Program. (*Id.* at ECF p. 46 (Exhibit D).)

At the same time, plaintiff states that Lewis "is the illegitimate purchaser of the plaintiff[']s property." (*Id.* ¶¶ 28.) Lewis "signed a fraudulent complaint against the plaintiff" and conspired with defendant Richard Farrell, an Assistant District Attorney in the Kings County District Attorney's Office, and Dino "to place fraudulent accusations against the plaintiff," in order to seize the property. (*Id.* ¶¶ 15-16, 36, 40-41, 46, 65, 68, 87.)

On July 27, 2015, plaintiff was "illegally arrested while plaintiff was conducting a legal and authorized real estate transaction" at the law office of defendant Joseph Webber. (*Id.* ¶¶ 18, 36, 43-44.) Webber "did so allow and cause the illegal transaction of the plaintiff[']s property[] by means of entrapment and conspiracy." (*Id.* ¶¶ 13, 31, 44.) Defendant Teresa Russo, a New

---

[1] Plaintiff also references David Dino as a Kings County Assistant District Attorney (Amend. Compl. ¶ 9), but he does not ascribe any actions to Dino in this capacity. This reference appears to be an error.

York City Police Detective, arrested plaintiff "without any probable cause and or warrant" and "place[d] false accusations upon the plaintiff in order to facilitate a false arrest." (*Id.* ¶¶ 18, 25, 65, 69, 86.) Defendant McMarro, a Deputy Sheriff, "illegally seize[d] property that belonged to the plaintiff" and "did so allow the illegal arrest and detention of the plaintiff." (*Id.* ¶ 22.) Defendant Pinero, also a Deputy Sheriff, participated in "the improper taking of the plaintiff[']s property." (*Id.* ¶ 23.)

Russo submitted an accusatory instrument dated July 27, 2015 charging plaintiff with forgery, grand larceny, and related crimes. (*Id.*, Exhibit B, at ECF p. 41.) The document alleged that on January 6, 2015 plaintiff submitted to the City Register a purported order allegedly issued by Justice Lewis, but that Supreme Court records showed no such order had been signed by Justice Lewis and entered into the docket. (*Id*. at ECF p. 42.) The document stated that plaintiff sold the property on May 21, 2015 and delivered "a purported deed to the property" that was deemed "clean" by the title company "because of the fraudulent order filed in January of 2015." (*Id*.) Defendant Kenneth Thompson, then the Kings County District Attorney, and Assistant District Attorney Farrell prosecuted plaintiff even though "the Kings County District Attorney Office had no proper jurisdiction to prosecute a property dispute." (Amend. Compl. ¶¶ 25, 74.) Lewis testified "that she did not see or [bear] witness to a crime taking place," but plaintiff was still prosecuted. (*Id.* ¶¶ 46.) Defendant Morris Shamuil, plaintiff's attorney at trial, "did so allow and cause defendant the deprivation of property," deprived plaintiff "of notice and opportunity to be heard," and "acted in bad faith with a malicious purpose . . . and a willful disregard to the plaintiffs[']s constitutional and human rights, safety and or plaintiff[']s property." (*Id.* ¶¶ 30, 49-52.)

Plaintiff states: "Defendants['] cause for the false arrest and malicious prosecution show there is and was a custom, policy, practice and or de facto custom of allowing such illegal behavior and acts to proceed within law enforcement and unified court system." (*Id.* ¶ 81.) He

3

asserts that the "municipality is responsible for its employees['] actions" and has a duty to "enforce, train, supervise." (*Id.* ¶ 84.) He states: "Police officers routinely offer false testimony and or affidavits, as well [as] evidence during court proceedings and often times the prosecutors are aware of the false testimony." (*Id.* ¶ 86.) Plaintiff does not provide any specific examples of false testimony or any unconstitutional policy or practice. Plaintiff seeks declaratory relief and five million dollars in both compensatory and punitive damages.

Plaintiff previously filed civil actions related to some of the same conduct. McCray v. Russo, 16-CV-2316-WFK-VMS (E.D.N.Y. Nov. 29, 2017) (challenge to 2015 criminal proceeding dismissed without prejudice after plaintiff voluntarily withdrew the claim while the criminal proceeding remained pending on appeal and "based upon the Heck . . . issue" (Dkt. No. 21)); McCray v. Lewis, 16-CV-3855-WFK-VMS (E.D.N.Y. Nov. 29, 2017) (dismissing claims related to a 2007 criminal proceeding on the basis of judicial immunity and dismissing claims related to the 2015 criminal proceeding on the basis of Younger v. Harris, 401 U.S. 37 (1971), which requires federal courts to abstain from interfering with pending state court criminal prosecutions). Plaintiff is also challenging his 2016 criminal conviction in a petition he filed pursuant to 28 U.S.C. § 2254, which remains pending. McCray v. Superintendent, No. 20-CV-1442-DG (E.D.N.Y.). Plaintiff also filed a petition, ostensibly pursuant to 28 U.S.C. § 2241, in the United States District Court for the Western District of New York. That petition was transferred to this Court and dismissed as duplicative of the pending petition in No. 20-CV-1442. McCray v. Wolcott, No. 20-CV-3920-WFK, slip op. (E.D.N.Y. Sept. 8 2020), *reconsideration denied*, slip op. (Mar. 18, 2021).

Plaintiff challenges his 2016 conviction pursuant to 42 U.S.C. § 1983, but does not allege that his conviction was overturned or otherwise rendered invalid, and he remains incarcerated as a result of that conviction. *See* http://nysdoccslookup.doccs.ny.gov/ (last visited 6/30/22).

4

## DISCUSSION

### I. Standard of Review

Pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that the plaintiff's pleadings should be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after Twombly, the court "remain[s] obligated to construe a *pro se* complaint liberally"). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

### II. Heck v. Humphrey

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held: "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. 477, 487 (1994). "[I]n

5

order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

Instead of bringing damages claims pursuant to Section 1983, state prisoners may challenge convictions they believe to be unconstitutional through direct appeal and collateral attacks in state courts first, and then through a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. See Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973) (habeas corpus is the appropriate and exclusive remedy in federal court for state prisoners attacking the validity of the fact or length of their confinement). This so-called favorable-termination rule has some limited exceptions, including where a plaintiff had no remedy through habeas corpus or other grounds for relief from an allegedly unconstitutional conviction.

In this case, plaintiff has not alleged that his conviction has been overturned or otherwise rendered invalid, and he has not raised any grounds for an exception to the favorable-termination rule. He currently has a pending petition seeking habeas corpus relief. Accordingly, all of plaintiff's claims for damages related to his 2016 Kings County conviction should be dismissed under 28 U.S.C. §1915(e)(2)(B) pursuant to Heck v. Humphrey.

**III.   Immunity**

Even if plaintiff's Complaint was not barred by Heck, plaintiff's claims would still be dismissed against several defendants based on immunity.

6

### a. Prosecutorial Immunity

Defendants Farrel and Thompson[2] are entitled to absolute immunity for plaintiff's prosecution. "Absolute immunity bars a civil suit against a prosecutor for conduct that is 'intimately associated with the judicial phase of the criminal process.'" Giraldo v. Kessler, 694 F.3d 161, 165 (2d Cir. 2012) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (quotation marks and brackets omitted). Specifically, immunity extends to deciding which offenses to charge, initiating a prosecution, presenting the case at trial, and evaluating and organizing evidence for presentation at trial or to a grand jury. Id. To determine whether a defendant is entitled to absolute immunity, courts must "take a 'functional approach, examining 'the nature of the function performed.'" Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). "The relevant question, therefore, is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." Giraldo, 694 F.3d at 166. If so, absolute immunity applies, "even in the face of a complaint's allegations of malicious or corrupt intent behind the acts." Id. (citing Burns v. Reed, 500 U.S. 478 at 489-90 (1991)). Absolute immunity for prosecutorial acts can be defeated only if the prosecutor is alleged to have acted in the complete absence of jurisdiction. Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005).

Here, plaintiff asserts that his "property dispute" was a civil matter and thus not under the jurisdiction of criminal prosecutors. However, plaintiff was charged with crimes related to false

---

[2] Kenneth Thompson was the District Attorney for Kings County at the time the criminal proceedings against plaintiff were commenced. He died on October 9, 2016. Alan Feuer, *Ken Thompson, Brooklyn District Attorney, Dies After Disclosing Cancer*, N. Y. TIMES, (Oct. 9, 2016) https://www.nytimes.com/2016/10/10/nyregion/ken-thompson-brooklyns-first-black-district-attorney-dies-at-50.html.

7

instruments and forgery, as well as grand larceny. These activities are clearly within the jurisdiction of the state criminal courts. Accordingly, the claims against Farrell and Thompson are barred by absolute prosecutorial immunity and the complaint against these defendants should be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### b. Judicial Immunity

To the extent that defendant Lewis is named in her capacity as a Justice of the New York Supreme Court and in her role presiding over plaintiff's 2007 civil proceedings, she is protected by judicial immunity. It is well-settled that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. Mireles v. Waco, 502 U.S. 9, 11 (1991); Forrester v. White, 484 U.S. 219, 225 (1988). The absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (quotations and citations omitted). Judicial immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12.

In this case, some of plaintiff's claims against Lewis involve her role as judge presiding over the 2007 civil actions involving the property and the subsequent allegation that plaintiff forged her signature on an order from those proceedings. Presiding over civil proceedings and issuing orders are official judicial acts. Plaintiff alleges that Lewis illegally presided over these cases, but there is nothing to suggest she was without jurisdiction to preside over these matters and issue appropriate orders. Accordingly, plaintiff's claims against Lewis should be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(iii).

### c. Witness Immunity

To the extent that plaintiff names Lewis not in her role as judge but in her role as a testifying witness, the claims against Lewis should be dismissed as these acts are also protected.

Witnesses who testify in judicial proceedings are protected by absolute immunity for their testimony, irrespective of the truthfulness of that testimony. Briscoe v. LaHue, 460 U.S. 325 (1983). "This immunity extends to all persons, whether governmental, expert, or lay witnesses, integral to the trial process." Storck v. Suffolk Cty. Dep't of Soc. Servs., 62 F. Supp. 2d 927, 945 (E.D.N.Y. 1999) (dismissing claims against doctors who testified about suspected child abuse in Family Court proceedings) (citing Briscoe, 460 U.S. at 335). Accordingly, plaintiff's claims against Lewis related to her testimony should also be dismissed pursuant to 28 U.S. C. §1915(e)(2)(B)(iii).

### IV. Private attorneys and other non-governmental actors

The claims against defendants Dino, Cadore, Shamuil, and Webber, who appear to be private citizens not government officials, should likewise be dismissed.

Plaintiff brings his claims under 42 U.S.C. § 1983 and asserts that the individual defendants violated his constitutional rights and conspired with others to deprive him of his constitutional rights. Section 1983 requires that a plaintiff show that the harm was "committed by a person acting under color of state law," and that the action "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). In order to state a claim under § 1983, plaintiff must allege that defendants acted under color of law. "Because the United States Constitution regulates only the Government, not private parties, a litigant…who alleges that her constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Grogan v. Blooming Grove Volunteer Ambulance Corps., 768 F.3d 259, 263 (2d Cir. 2014) (citation and internal quotation marks omitted). "[P]rivate conduct, no matter how discriminatory or wrongful, is not controlled by § 1983…except in the limited situations where a private entity's challenged actions are fairly attributable to the state." Antwi v. Montefiore Med. Ctr., 14 Civ. 840 (ER), 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014) (citation and internal

quotation marks omitted). The actions of private entities and individuals "are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the state, ('the public function test')." Sybalski v. Indep. Group Home Living Program, 546 F.3d 255, 257 (2d Cir. 2008) (citations and alterations omitted); see also Posr v. City of New York, No. 15 Civ. 0584 (BMC)(LB), 2015 WL 1569179, at *2 (E.D.N.Y. April 4, 2015) (although § 1983 can reach private individuals in certain limited circumstances, "these exceptions are narrow"). "It is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." Manko v. Steinhardt, No. 11-CV-5430-KAM, 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases).

While plaintiff makes vague and conclusory allegations that Cadore was an "agent or employee of the Department of Housing, Preservation and Development"; that Dino was an Assistant District Attorney; and that plaintiff's attorneys, Webber and Shamuil, were "acting under the color of state law," these statements are legal conclusions. He also asserts that Dino and Webber conspired with government officials to cause plaintiff's arrest. However, plaintiff fails to demonstrate any connection between these individuals and the prosecuting authorities or law enforcement officials. As plaintiff fails to allege facts to plausibly attribute defendants Dino, Cadore, Shamuil, and Webber's actions to the State, plaintiff's claims against them should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

V.     **Conclusory Allegations against the City of New York**

To the extent that plaintiff raises allegations of conspiracy and municipal liability, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

10

statements, do not suffice." Iqbal, 556 U.S. at 678. In order to sustain a § 1983 claim against a municipality, a plaintiff must allege the existence of an officially adopted custom, policy or practice that caused the injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978); Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) ("Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff."). Moreover, "[t]he Supreme Court has held that '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" Giscombe v. N.Y. City Dep't of Educ., 39 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)); see also Hudson v. Cty. of Dutchess, 51 F. Supp. 3d 357, 368 (S.D.N.Y. 2014) (collecting cases).

Plaintiff's vague allegations and conclusory statements of a policy or custom of "illegal behavior . . . within law enforcement and unified court system" are insufficient to support his claims of municipal responsibility. Therefore, plaintiff's municipal liability claims against the City of New York should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### VI. Statute of Limitations for Section 1983 claims

Should plaintiff's conviction be invalidated, via the pending petition for habeas corpus or some other means, and the Heck bar be lifted, plaintiff's false arrest claims against the remaining defendants, Russo, McMarro, and Pinero would be subject to dismissal as time-barred. For claims arising in New York, the statute of limitations for civil rights actions under 42 U.S.C. § 1983 is three years. Owens v. Okure, 488 U.S. 235, 249-51 (1989) (discussing Wilson v. Garcia, 471 U.S. 261 (1985), which held that courts deciding claims under § 1983 should "borrow" the

11

State statute of limitations for personal injury actions); N.Y. C.P.L.R. § 214 (McKinney's) (providing a three-year statute of limitations for personal injury actions arising in New York State, including constitutional torts). Generally, a § 1983 claim accrues (the time limit begins) "when the plaintiff knows or has reason to know of the harm" he or she has suffered. See Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)). The statute of limitations for a § 1983 claim seeking damages for false imprisonment and false arrest begins to run at the time the claimant becomes detained pursuant to legal process. Wallace v. Kato, 549 U.S.384, 388-89 (2007). Thus, as plaintiff did not file the instant action until July 20, 2021, the statute of limitations for his false arrest claims against Russo, McMarro and Pinero had already expired.[3] On the other hand, "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have terminated in his favor." McDonough v. Smith, – U.S. –, 139 S. Ct. 2149, 2154–55, 204 L. Ed. 2d 506 (2019). If plaintiff's conviction is invalidated, he would still be able to pursue his fabricated evidence claim at that time.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the case should be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B). Although generally "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted), here plaintiff has already filed an amended complaint. Consideration of plaintiff's amended pleading confirms that any further amendment would be futile as plaintiff's claims could not withstand a motion to dismiss pursuant

---

[3] Plaintiff previously filed complaints asserting claims against defendants Russo and Lewis in which he asserted that his August 27, 2015, arrest and subsequent prosecution violated his constitutional rights. Thus, plaintiff was aware of these potential claims when he filed those actions in 2016.

to Rule 12(b)(6). Lucente v. Int'l Bus. Machs. Corp., 310 F. 3d 243, 258 (2d Cir. 2002); see Cuoco, 222 F.3d at 112, ("The problem with Cuoco's causes of action is substantive, better pleading will not cure it. Repleading would thus be futile."). Moreover, if this Report is adopted, I recommend that the Court should certify that no appeal would be taken in good faith. 28 U.S.C. §1915(a)(3); Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985). In addition to plaintiff, the Clerk of Court is directed to serve a copy of this Report on the New York City Law Department, Attention: Chief of Special Federal Litigation, and note such service on the docket.

SO ORDERED.

Dated: July 11, 2022,
Brooklyn, New York

/S/
LOIS BLOOM
United States Magistrate Judge